We're ready to hear 19-1096, Fireman's Fund Insurance v. Steele Street Limited. Are you ready to proceed, Mr. Ridley? Yes, I am, Your Honor. Good morning, Your Honors. May it please the Court, Terrence Ridley for Appellant, Fireman's Fund Insurance Company. I plan to take four or five minutes for rebuttal. Your Honors, this appeal presents a jurisdictional issue as well as at least one substantive insurance law question. So I will address the jurisdictional issue first, which is whether the District Court's order on cross motions or summary judgment requiring Fireman's Fund to proceed to appraisal on the BRIC claim vested this Court with jurisdiction under 1292A1. Now, the order constituted injunctive relief. The insured sought enforcement significantly. It sought enforcement of the appraisal provision in its counterclaims. The first counterclaim is what sought enforcement and that's exactly what it got from the District Court's order. It was an order of specific performance ordering Fireman's Fund to perform appraisal of the BRIC claim under the policy. Putting that, Mr. Ridley, putting that within the legal framework, then we can apply it to this case. But just big picture, help me to distinguish what are the attributes between orders that have the practical effect of granting or denying injunctive relief that would fall under the Carson rubric and those which would fit within the Westar rubric, which I assume is your position here that this order fits into the latter. So just as a big picture matter, what are the key attributes that would distinguish those two categories of orders? So, Your Honor, first of all, I think the Carson decision is distinguishable. That case came up on a stipulated consent decree that was in effect. And I think that's a key attribute of that case. You're saying that's fact-bound? You're saying that it did not articulate any governing principles that we have to follow as a general matter? Well, I think the answer to that question, Your Honor, is found in three Tenth Circuit cases. And the distinction that emerges is that when there is injunctive relief that is granted, there's authority from this district that says the court need not even go to the harm test of the Carson case. And that's Westar. And so what I'm asking you are what are the attributes when I look at that order, how do I know which bucket to put it in? What are the attributes of the order that suggests that it is in practical effect a grant of injunctive relief or it itself is a grant of injunctive relief? The latter category is the one that I believe you're operating under and believe is applicable here, right? That's right, Your Honor. Well, then what does the order look like? What's the difference between those two orders? I mean, what characteristics should I be looking for to make a determination? I think the characteristic you look for, Your Honor, is the characteristic that exists in the Westar case, the church mutual v. Ma'afu case and the farmer case. And in all three of those cases, Your Honor, there was a, the issue came up on summary judgment. There was a grant of summary judgment in each one of those cases pursuant to a contract like we have here that amounted to an order of specific performance. So, for example, in the Westar case, it was an order to go pay criminal defense costs, something that the corporation did not want to do. In the church mutual case, it was an order to provide defense and pay defense costs, something that the insurance company did not want to do, just like it doesn't want to go to appraisal here. And finally, in the farmer case, it was an order to comply with a settlement agreement, including the obligation to go forth and pay and go ahead and execute transactional documents. Again, something that the party did not want to do. In all three of those cases, there was a mandatory specific performance order requiring performance. Well, you spoke about there being a grant of summary judgment. Well, yes, there's a grant of summary judgment, but in Westar in particular, which I'm focusing on, because it drew the line between what requires the Carson factors and what doesn't, there was an independent exercise of equitable power. In other words, it was not just the fact that you issued a summary judgment order that in practical effect resulted in someone having to do something. There was an independent exercise of equitable power saying you do X, Y, and Z. I'm having a hard time seeing where there is that here. Here you had a grant of summary judgment, but where is the specific independent exercise of equitable power that says you do this, which is what you had in Westar in terms of making the payments. And so as far as I can glean, that's the difference between those two sets of orders. You help me to understand why I'm wrong. If you don't do it, you will be subject to contempt of court. That's correct, your honor. And that's the distinction. That's right. And that's exactly what your honor said in the Farmer v. Banco Popular case. In that case, your honor said that the order to go ahead and perform the settlement agreement and execute the transactional documents constituted an order of specific performance subject to contempt if it was not followed. And that's really what we're dealing with here. So that case is on point, your honor. And what is it that leads you to believe that there is the subject to contempt element of the order here? Because you had a grant of summary judgment. And since what was contested was, do we go to this process of resolution as relates to the amount of damages or not? That was what was contested. And so when the grant of summary judgment took place, there was only one thing that needed to happen, which is you have to go through that process. But where is the hook for a contempt order here? Your honor, the order on page 617, and it really boils down to, I think it's just one sentence. And the sentence is that a fireman's fund needs to proceed or shall proceed or is required, I think it was required to proceed to appraisal. That's the upshot of the order. It is granting the request by the defendant in that case for enforcement. And while the court, that opinion itself does not specifically say subject to contempt, it is certainly an order of a federal court that needs to be obeyed. Well, I mean, any grant of summary judgment that says somebody wins and somebody loses could have a consequence that somebody has to take some action as a consequence of the order. That doesn't necessarily mean that it's subject to contempt. And that's why I'm talking about the practical effect thing. Because if somebody grants a summary judgment order, and as a practical effect of that grant, you have certain actions you need to take, you're under the Carson test. And so that's what I'm trying to understand. Why isn't that what we've got here? Because no, there isn't a line that says, if you don't do this subject to contempt, you're subject to contempt. You don't have that at all. Well, Your Honor, I would direct the court to two cases in specific, which I think would be helpful to it. Okay. Specifically, in the Westar Energy case, at page 1222. I think the answer is found in this sentence where it says, in part, since the district court's order expressly granted relief, in this case, enforcement, it is immediately appealable, notwithstanding the court's failure to label the relief as injunctive. And then it has footnote six right there. And the tail end of footnote six, I think should also be very helpful to the court. And there it cites to, it's talking about Carson, it's specifically cited to the Saudi bank, the Exxon case. What the principal cited is that that case held Carson inapplicable when an order had the practical effect of granting an injunction. So while I think this case is an injunction in substance, i.e. insurance company go forth and go to appraisal, just like in the farmer case, go forth and, I'm sorry, in the Church Mutual case, go forth and provide a defense and go forth and pay. But I think that's where the answer to the question is, that in the first instance, I think this is a substantive injunction. But even if you wanted to look at Carson, the answer in that footnote is, well, you don't go to Carson when the order had the practical effect of granting an injunction. And I think here, that was the practical effect of Judge Brimmer's order. And it falls, I think, squarely in line with the Westar case, the farmer case, and the Church Mutual case. Let me ask questions about the merits if we turn out to have, to feel we have jurisdiction. I'd like you to explain why ordering the appraisal is really a matter of interpreting the contract and determining coverage. It seems to me that there's coverage for damage. You have an expert saying there was no damage, there was no decrease in the value of this brick facade. But that seems to me to be a fact question. And why wouldn't the whether what happened to the wall actually caused any damage? That does not seem to be to be a coverage question. That seems to me to be a factual issue, whether there was damage. Yeah. And so, Your Honor, I think the answer to your question is found in the undisputed facts of the summary judgment record. And what's important about those facts is that my client, Fireman's Fund, when presented with that brick claim, that all the brick needs to be ripped off and replaced, went out and hired an engineer from Knott Labs, a fellow named Peterson. He did his homework, Your Honor. He inspected the property. He went ahead and looked at information from the American... Why should we believe him as a matter of law or as a factual causation, when the other guy said there was $600,000 worth of damage? And your policy clearly covers this particular building. You're right, Your Honor. I just don't understand how this even got to court. Well, the... I mean, if the appraisal process works and they come back with no damage, zero. Okay. If they come back and say, oh, there was damage and we find it was $100,000 damage. Okay. It's done. I just don't understand why we're even here on this case. Your Honor, we're here because the upshot of what the insurance company did was it focused on the coverage clause. Well, but the company is not precluded from making a coverage determination, assuming that there's something other than a factual causation involved here. Well, I think what... I don't see even a coverage issue here, having read the policy, and I've got it right here in case anybody wants to see it. So the building was insured. One person claims the building was damaged. Another person claims, no, it wasn't damaged. That's not coverage. Your Honor, I think the coverage clause goes to whether there's direct physical loss or damage to the property. And what's really... That's why you have the appraisal. Well, I respectfully disagree with that, Your Honor, under the particular facts of this case. And what's important is what facts went unrebutted before the lower court. And the facts were that our engineer said that this brick performed exactly as intended. There was no damage to functionality, no damage to aesthetics. What would you expect him to say? You hired him. Now they got the other guy that comes get... that's hired. He said there was damage. Now, why do we believe your person to the exclusion of in the cello text case, Your Honor, where the non-moving party, in this case, Steel Street, was obligated to come forth with specific evidence, specific evidence that rebutted what we put forth. They didn't do that. They did not rebut that there was no damage to functionality, no damage to aesthetics, no damage to lifespan, no impact on value. And the conclusion was that this brick performed exactly as intended. What did they do in response on summary judgment? If you look at Judge Bermer's opinion, there's nothing there on the factual record. The only thing, if you scour that record, I think the only thing the court will find is that on page 574, there are four conclusory sentences from the contingency fee-based public adjuster. There was no affidavit. There was no science. There was not a single photograph depicting damage. Your Honor, I think if I'm reading my clock correctly. Yes, thank you. Any other questions from the panel? Judge Holmes? No. Judge Kelly? No. Okay. Mr. Mamill? Yes, Your Honor. Thank you. I'm Christopher Mamill on behalf of our appellee here, Steel Street. May it please the court and counsel, good morning. One of the things that we think is significant here is that the district court's order essentially declared the scope of the appraisal. If we accept what Fireman's Fund says- Are you addressing the merits or jurisdiction? Just so we're oriented. I'm a little of both, candidly. Since Judge Holmes started with the issue on jurisdiction, I'm addressing that briefly. A piece of that certainly is that in Fireman's Fund's opening brief here and throughout its arguments, it has said that it already is willing and intended and had agreed to go to appraisal. What the effect of the district court's order is, is merely to declare the scope of what will be appraised, the factual issues that are going to be in the appraisal. That is exactly what Fireman's Fund asked the court to do. I think much like I heard Judge Kelly say, I start with the policy as Fireman's Fund did as well. That policy and the court has it on the pertinent portions at least that start in the record at page 319, but it is an all risk policy. It's the broadest coverage that is available in the market and it covers the building as we've gone through here. It doesn't talk about bits and pieces of the building. It covers the entire building. It then goes on and it determines covered causes of loss. That's on page, the record at 320. It's all risks of direct physical loss unless the loss is excluded or limited. None of the limitations have anything to do with it. Are you saying that even if Fireman's Fund could appeal an order requiring an appraisal, submitting it to the that this particular issue should not be subject to the appraisal? Is that your point? I'm suggesting two things. One of them is that there is no injunctive order that is in effect here because Fireman's Fund has already agreed to go to appraisal. It hasn't agreed to go to distinction. That is a distinction, but the response to that essentially is that it asked the district court to tell it whether this issue is within the scope of appraisal. It's a factual issue of was there damage to the brick as well. If we look in the record at the coverage letter, which is the fundamental letter, it's in the record at 539. It's the letter of October 17, 2016. Fireman's Fund evaluated this loss and the claim for damage exactly as the policy directed it to. It acknowledged that it has coverage for hail because hail is not excluded. It went through and its correspondence and it talked about its investigation and its conclusion was that Fireman's Fund evaluated the claim for cosmetic damage to the brick facade of the building, but is determined that it will not be issuing any payment for this portion. But its argument is that it's undisputed that there was no damage, no decrease in value of the brick facade, and therefore that should not be subject to appraisal. Is it disputed? You didn't dispute it, did you, in district court, that there was no damage to the facade? Well, we did dispute. In fact, we disputed it based upon Fireman's Fund's own admissions. They acknowledged that there were physical changes, thus damage. There was a direct physical impact to the brick. They refused to value that damage. That sounds now like we're getting into a legal argument. Well, because what Fireman's Fund is saying is that, yes, there was some physical change to the facade, but that does not constitute damage. There is damage to the facade only if the value of the facade or the length of time, the longevity of the facade is at issue. And since those facts are not disputed and you're seeking damages because there was a physical change to the brick, even though it didn't decrease the value, that sounds to me like that is a coverage question. What is the meaning of damages? Does it include physical change that doesn't affect the value? Am I correct about what the dispute is? Your Honor, I wouldn't characterize it the way the court is. What we have... How would you characterize it? Because it sounds like you're not... From what you said, I gather you do not dispute the factual conclusions of the expert for Fireman's Fund, that this physical change in the surface did not affect the appearance, longevity, etc. Therefore, it did not affect the value of the facade. Therefore, there's no right to recover under the policy. And you're not disputing the facts, the factual portion of that. You're not disputing that there was... The value. But you're saying, nevertheless, you can recover under the policy. Your Honor, what we're saying is that we do dispute the factual determination that was made by this engineer, that there was no change in value. We dispute that conclusion and demanded that we determine the determination by the expert, that there was no decrease in value of the facade. We are. And we are also disputing that there's no remedy. Did you put on... I'm sorry. Finish your sentence. Maybe you're saying something. Thank you, Judge. We were also disputing that there is no remedy that is required under the policy. And that remedy, the way the policy is written, is to be determined in appraisal. The amount of the loss, which includes causation of what damage the hail occasioned, and then the appropriate means to remedy that, if any. They could have... In other words, you're saying that even if there was no decrease in value, you're entitled to recover for what it costs to repair the change in the surface of the bricks. Is that what you're saying? The policy provides that remedy, Your Honor. And it does because... I'm asking what your position is, not arguing the merits of that position. But you seem to be saying two things just now. One is, you do dispute the expert's statement that there's no decrease in value. And second, regardless of whether there is any decrease in value, the policy provides a remedy for a change in the surface, regardless of the brick, regardless of whether that diminished the value of the brick wall. Is that correct? We are saying both those things. One of them is subject to appraisal. And the other may be subject to a challenge on coverage later, if indeed there is an award that determines an amount of loss and a remedy under the policy. Fireman's Fund, still in its appraisal provisions, has the right to challenge coverage. It has never done that in this case. Okay. So you're saying it goes to the appraisers, and they can determine whether there was any decrease in value. That is for the appraisers. That cannot be challenged later by Fireman's Fund. But if they also say, even if they find that there's no change in the value of the facade, there's still coverage and steel is entitled to money to repair the change in the brick. That is something that might be a coverage issue, and Fireman's Fund could seek a remedy in court after the appraisal. Am I understanding you correctly? I believe that's the way the policy works, Your Honor. Yes. I was under the impression that the dispute is whether the hailstorm caused zero worth of damage per fireman's position or $600,000 worth of damage per your position. Is that the issue? That is the issue. The causation issue, a factual issue. It is. Okay. Let me pursue that then. Because what Fireman's is saying is, although there might have been a factual dispute about whether there was any decrease in value of the wall, you have not provided any evidence that that's really in dispute because you haven't done to rebut their experts' findings that there's no decrease in value of the wall. So therefore, taking this to the appraiser is a waste of time. How do you respond to that? I think I'm restating their position reasonably accurately. Thank you. The response to that is that there was evidence that was presented to Fireman's Fund, and there were references to that evidence, including the valuation of $600,000 approximately for the damage, the repair of the damage. That was a part of the record that the District Court had to show the dispute and the factual disagreement in the amount of the loss. That was in the record that the District Court had before it. But the $600,000 figure that you submitted was the cost of returning the brick facade to the condition it was in before the hail. It had nothing to do with whether there was a decrease in value of the brick facade. Did you have any evidence that there was a decrease in value of the brick facade as a result of the hail? Did you present any to the District Court? I think that the evidence was that the decrease in value is based upon the cost of repair, and that becomes a liability of the building. There is evidence that the diminution in value, the change in value, was the cost to actually repair those items that were damaged. Your view is that trying to restore to the appearance that it had before is a necessary part of remediating damage to the building. If you go to the appraisal, the appraiser can say, well, I don't think there was any damage related to the hail storm and reach a zero number or reach a number that's close to the number that you're talking about, consistent with what Judge Kelly, I think, was talking about on the causation front. In other words, if I understood you correctly, that is a diminution in value. Am I misunderstanding? You are not, Your Honor. That is the contention and the issue that would be resolved factually if this were to go to appraisal, like all of the other issues that Fireman's Fund has agreed would go to appraisal. Let me be more precise here then. What their experts said is that the hail did not affect the lifespan of the brick, the value of the brick, the appearance of the brick facade, or the function of the brick facade. Did you have any evidence that either of those four things was affected by the hail? Your Honor, I think that the evidence was that there were chips that had occurred and as a result there were exposed areas of the brick that were characterized as oxidized and that changed the performance characteristics of the brick. That was disputed between the investigators for Steel Record. When you say the performance characteristics, I guess in the terms of the expert that would mean that the function of the brick was affected. You're saying there's evidence in the record of that? We would say, Your Honor, that the evidence is that the performance of the brick over time is affected by the impacts and the chips that occurred because it exposes areas of the brick that were not previously exposed to the elements. And that was the flaking issue, right? I'm sorry? Wasn't that the term that was used? Flaking? That is characterized sometimes as flaking. We characterize it a bit more dramatically, but it is the result of two-inch hailstones impacting the surfaces of these bricks across the building. This was an extremely heavy... As an effect on the lifespan, is what you're saying? There are effects on the lifespan that was not fully developed in Alcantara, Your Honor, because this case did not go to appraisal. But the evidence that was presented between the two sides was that there was an impact on the long-term performance which required a repair. I think I understand you're over a minute. I probably should give Mr. Ridley 20 seconds because we went over with you, but not more than 20 seconds, Mr. Ridley. Thank you, Your Honor. The problem with finding that this case goes to appraisal will effectively deprive insurance companies of the right to make the coverage decision in the first instance. And if that is the ruling of the court, the problem is going to be this. Every time an insurance company says, no damage and presents strong evidence, which truly was not rebutted, any contingency fee public adjuster worth his or her salt will always respond with this, Your Honor. They will always say, wait a minute, causation. It's causation. We have to go to appraisal. That's the problem. You are the people that put in the appraisal language in the policy. If you don't want to do an appraisal, don't do an appraisal. But don't put it in your policy that if there's a dispute, you'll put it in your policy or you'll go to appraisal. And that clause says nothing about causation. That's the key. The plain language just says nothing about causation, Your Honor. Thank you, counsel. Appreciate the argument. Thank you, Your Honor. Case is submitted and counsel are excused.